<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEAH HELLER,<br><br>               Plaintiff,<br><br>   vs.<br><br>PARRY AFTAB,<br>AFTAB & SAVITT, P.C.<br><br>          Defendants. | Civil Action No. 98-5473 (KSH)<br><br><u>**OPINION**</u> |

<u>**KATHARINE S. HAYDEN, U.S.D.J.**</u>

## I.  INTRODUCTION

This legal malpractice action arises out of the defendants' representation of Leah Heller ("Heller") in the settlement of her divorce.  The plaintiff initially filed in New Jersey Superior Court.  The defendants removed the action and requested an automatic reference to the bankruptcy court because part of the legal malpractice claim was based on the defendants' representation of Heller in a prior bankruptcy proceeding.  Heller later amended the complaint to remove any claims relating to the bankruptcy proceeding, and the case returned to this Court. There have been stay orders issued at various times; now, both sides bring cross motions for summary judgment.

## II.  BACKGROUND

1

The following factual background is taken from the stipulation of uncontested facts in the Final Pretrial Order (Docket #35).

Leah Heller was previously married to Lawrence Prager ("Prager").  (Final Pretrial Order ¶ 1.)  During their marriage they owned and operated an insurance business called Continental Coverage Corporation ("CCC").  (Final Pretrial Order ¶ 4.)  On October 26, 1992, Heller filed a complaint for a divorce.  (Id. ¶ 2.)  Prager planned to continue to run CCC as a going concern and sought to buy out Heller's share of the company.  The divorce proceedings were protracted, and over the years Heller was represented by different lawyers.  (Id. ¶¶ 7, 8, 9.)

In 1995, Heller retained Parry Aftab ("Aftab"), a principal in the law firm of Aftab and Savitt, P.C., to represent her in certain legal matters.  (Id. ¶ 10.)  The scope of Aftab's representation of Heller is in dispute, but it is not contested that at some point, Aftab advised Heller that she would eventually have to retain a matrimonial attorney to litigate her divorce.  (Id. ¶ 11.)  In 1996, Heller retained Vincent D'Elia to serve as matrimonial counsel; then she discharged him and next hired Petro Morgos, who was associated with Aftab & Savitt, as "of counsel."  (Id. ¶ 14.)

On June 5, 1996, after lengthy settlement discussions, the parties agreed on an amount that Prager would pay Heller as equitable distribution based on the appraised value of CCC.  (Final Pretrial Order ¶¶ 17, 22).  It was agreed as well that Prager would pay out Heller's share of equitable distribution in monthly payments.  Exactly how much Prager would pay each month remained in contention until his accountant suggested that a portion of each monthly equitable distribution payment be characterized as "alimony" so Prager could get a tax deduction.  (Id. ¶ 17.)  The parties settled on a total monthly payment of $10,000, which was divided up as

2

follows:  alimony ($2,500/year for 10 years); consulting fees ($2,000/month for 7 years); child support ($2,000/month for 7 years); car payment ($400/month for 7 years); and stock repurchase payments ($2,500/month for 7 years). (Id.)

Heller and Prager's settlement agreement was placed on the record before the Honorable Edward Torack, J.S.C. on June 5, 1996.  (Final Pretrial Order ¶ 23.)  Aftab represented Heller when the settlement was placed on the record.  Petro Morgos was not present, although he had attended the settlement discussions.  (Id. ¶¶ 15, 16.)  Subsequently, Aftab submitted a formal written dual final judgment of divorce that stated in relevant part, "Larry shall pay Leah $2,5000.00 each month, . . . as and for alimony, this shall be payable for a period of ten years (120 months) *without regard to any remarriage of Leah*.  This amount shall be taxable to Leah and deductible to Larry."  (Dual Final Judgment of Divorce Prepared by Aftab and Savitt, Ex. F to the Thyne Decl.)(emphasis added.)

On June 27, 1996, Prager's attorney Sheldon Liebowitz ("Liebowitz") requested a transcript of the final hearing and submitted his own form of Final Judgment on August 12, 1996.  This document stated:  "Larry shall pay Leah $2,500.00 each month. . . as and for alimony, which shall be payable for a period of ten years (120 months).  This amount shall be taxable to Leah and deductible to Larry.  Alimony shall terminate *upon the death of either party, the remarriage of the wife, the wife's cohabitation under New Jersey law or the expiration of the ten years whichever occurs first*."  (First Dual Final Judgment of Divorce prepared by Sheldon Liebowitz, Ex. J to the Thyne Decl.)(emphasis added.)  That same day Aftab wrote to Judge Torack:

> While the alimony provisions were agreed to between the parties, their discussion was not picked up on the record.  However, the parties agreed that the alimony was to continue for ten years without termination.  This was done because it was a method for

> Mr. Prager to purchase part of Mrs. Prager's interest in CCC while receiving a tax
> benefit for such payments.  Therefore, the termination of such payments upon
> remarriage would defeat the purpose of the payout.

(Letter from Parry Aftab to Judge Torack, Ex K to the Thyne Decl.)

The next day Heller faxed a letter to Aftab expressing her concern about the way Prager's

attorney had characterized the alimony in his proposed judgment of divorce.  (Final Pretrial

Order ¶ 33.)  On the same day, Liebowitz submitted an amended proposed judgment of divorce

to the court.  (Id. ¶ 32.)  This judgment of divorce modified the section on alimony to read:

"Larry shall pay Leah $2,500.00 each month, . . . as and for alimony which shall be payable for a

period of ten years (120 months), this amount shall be taxable to Leah and deductible to Larry."

(Second Dual Final Judgment of Divorce prepared by Sheldon Liebowitz, Ex. L to the Thyne

Decl.)

On October 16, 1996, Judge Torack entered a final judgment of divorce that provided in

relevant part:  "Larry shall pay Leah $2,500.00 each month due on the first day of each month . .

. as and for alimony which shall be payable for a period of ten years (120 months), this amount

shall be taxable to Leah and deductible to Larry."  (Dual Final Judgment of Divorce Ex. U to the

Thyne Decl.)  On October 17, 1996, Judge Torack wrote to the attorneys:

> I have reviewed the correspondence from counsel regarding the form of final judgment.
> I have also reviewed the transcript of proceedings on June 5, 1996 when the settlement
> was placed on the record. . . .  there was no indication in the transcript providing that
> alimony was payable for a fixed term regardless of a change of circumstances including
> death.  Paragraph 5 will stand as drafted by Mr. Liebowitz since it accurately reflects
> the agreement outlined on the record in open court.

(Letter from Judge Torack to Parry Aftab, Ex. U to the Thyne Decl.)

On August 7, 1997, Heller married Neil Heller and the following year, Prager moved to

discontinue the $2500 per month "alimony" payments based on her remarriage.  At this point,

4

Aftab no longer represented Heller, but she submitted a certification in opposition to the motion on Heller's behalf.  On August 7, 1998, the Honorable Harold C. Hollenbeck, J.S.C., who was then assigned to the case, entered an order terminating Prager's obligation to make the "alimony" payments.  (August 7, 1998 Order Ex. Z to the Thyne Decl.)  As a result of the discontinuance of this payment Heller did not receive a significant portion of the negotiated equitable distribution.

## III.  STANDARD

Summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of fact exists, the Court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).  The Court may not weigh the evidence or make credibility determinations on a motion for summary judgment.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

## IV.  DISCUSSION

Under New Jersey law, an attorney who neglects or mismanages any cause in which s/he is employed is liable for the damages sustained by the client.  N.J.S.A. 2A:13-4.  There are three elements to legal malpractice in New Jersey:  "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 167 N.J. 414, 425 (2001).

Aftab and Heller both claim that there was an agreement with Prager concerning the

continuation of alimony in the event of her remarriage but the record shows that the family part judges who considered when alimony terminated both rejected that position.  Heller's malpractice claim is that at the defendants "breached their duty to the Plaintiff when they failed to memorialize her settlement and failed to advise her of the risks of entering into such a settlement without a clear memorialization of her entitlement to receive these payments without regard to the traditional termination of alimony events, such as remarriage."  (Plaintiff's Brief in Support of Motion for Summary Judgment 13.)

Both sides have submitted an expert report on Heller's malpractice claim from a practicing matrimonial specialist.  Heller's was prepared by Judith Q. Bielan, who concluded that Aftab's failure to place the alimony agreement on the record was an omission that rose to the level of malpractice.  (Report of Judith Bielan 13 Ex. HH to Thyne Decl.)  She also concluded that Aftab made a negligent misrepresentation when she advised Heller that the alimony payments would continue regardless of her remarriage.  (Id.)  In contrast, Susan Reach Winters concluded that Aftab pursued a reasonable strategy at the direction of her client and cannot be held liable just because the strategy led to an unprofitable outcome.  (Report of Susan Reach Winters Ex. II to Thyne Decl.)  She claims that Heller was aware of the risks but nonetheless chose to accept the settlement because its terms were highly favorable to her in other respects. (Id.)

"In legal malpractice cases, as in other cases, summary disposition is appropriate only when there is no genuine dispute of material fact."  Ziegelheim v. Apollo, 128 N.J., 250, 262. Based on the record before the Court it appears that there are genuine issues of material fact.

With regard to Heller's motion for summary judgment, one disputed issue is the scope of Aftab's representation.  Aftab did not hold herself out to be a matrimonial specialist and she

6

advised Heller that she would have to retain a matrimonial attorney to litigate her divorce.  But it appears that she did play a significant role in negotiating  the divorce settlement and ultimately placed it on the record.  The scope of Aftab's representation is a material issue because it affects the applicable standard of care. "What constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform." St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 588 (1982).  Petro Morgos, Heller's was involved in the settlement discussions but the record is unclear as to the extent of his involvement.  Complicating matters is the fact that Heller's expert evaluated Aftab and Morgos's conduct collectively.  (Report of Judith Bielan Ex. HH to Thyne Decl.)  Heller and Morgos settled.  For the purposes of this motion the Court cannot discern Bielan's opinion on Aftab's conduct individually.  Moreover, the expert reports conflict in their approach:  Heller's expert concentrates on the record of the proceedings; Aftab's looks at the representation as a whole.  Both reflect disagreement about whether Aftab's conduct fell below the applicable standard of care.

With regard to Aftab's motion for summary judgment, an issue that remains in dispute on this record is the extent to which Aftab explained to Heller the risk of characterizing a portion of the equitable distribution as "alimony."  The record is far from clear on this point.  Heller claims that Aftab did not inform her of the risk before she entered into the settlement (Heller's Answers to Interrogatories Ex. B to Thyne Decl.). Aftab appears to take contradictory positions about whether she advised Heller of the risk.  In her deposition Aftab stated that on the day the settlement was placed on the record she advised Heller "many times" that she might lose her ability to obtain alimony payment if she remarried.  (Aftab Dep. 82:3-12 Ex. DD to the Thyne Decl.)  However, in the certification she submitted to the family part judge post judgment, when

Prager sought to terminate the alimony payments, she stated: "The use of the word "alimony" was only suggested as a method of payment . . . These payments were to continue regardless of remarriage or other traditional alimony termination events." (Aftab's Cert. ¶ 10 Ex. Y to Thyne Decl.)

Finally, awarding summary judgment to either side is an unlikely disposition of this litigation. The New Jersey Supreme Court clarified in <u>Ziegelheim v. Apollo</u> that an aggrieved litigant may sue for malpractice even though s/he agreed to the terms of a divorce settlement. 128 N.J. at 265. But the court did not grant summary judgment to either side in that case. <u>Id.</u> at 267. Here, as best as the Court can determine, the fight is about Aftab's responsibility for the failure of enforcement of the $2,500 monthly payments for a fixed ten year term, arising out of, among other things, what Aftab told Heller (which is unclear), and what her duties were to Heller (which is also unclear). Moreover, it is not particularly clear from the correspondence sent to Judge Torack and the competing final judgments of divorce that both sides presented, whether the obligation on Prager's part to pay for a fixed term was mutually agreed to. The uncertainty on these salient issues is simply not a template for summary judgment for either side.

## V.  CONCLUSION

For the foregoing reasons, both motions for summary judgment are denied. An appropriate order will be entered.


Dated: August 7, 2007                    /s/Katharine S. Hayden
                                         Katharine S. Hayden, U.S.D.J.


8